No. 10.—WILLIAM H. HAWKS, plaintiff in error, *vs.* MAT. J. PATTON, defendant in error.

[1.] In cases of libel and slander, an exception is sometimes made to the general rule, that witnesses must state facts, and not their inferences from them; and as the slander and damage consist in the apprehension of the hearers, they are allowed to give their *understanding* of the words published, or spoken.

[2.] If, in a case for words, the pleader adopt the form suggested by the Act of 1847, he must follow that form without material variation, so far as it goes; but the words set forth may be accompanied by such explanatory allegations or inuendoes, as serve to state the cause of action distinctly.

Case for words, in Oglethorpe Superior Court. Tried before Judge ANDREWS, October Term, 1854.

This was an action brought by Patton against Hawks, for slander, under the Statutory form, upon the following words: "Matthew J. Patton forged a promissory note on Isaac Sterling, and traded it to me." Upon the trial, plaintiff proved by a witness that "he heard Hawks say to Everett, Gooldsby is no worse than some of his kin, (referring to plaintiff.) Patton sold him a note on Isaac Sterling, and that he presented it and the maker denied it; that he spoke to Patton about it, and he was going to carry it to Mr. Peeples to see if it was a good note. Hawks said he "believed it was a forged note." Counsel for plaintiff proposed to ask the wit-

ness what he *understood* Hawks to mean? Defendant's Counsel objected, the Court permitted the witness to answer, and this decision is assigned as error.

The Court charged the Jury, that the words proved could not sustain the declaration, because the action was for words actionable *per se.* and the words proved are not.

Counsel for plaintiff then moved to amend, by adding another count, in the Common Law form, upon the words proven, alleging a colloquium, &c. The Court allowed the amendment, and this decision is also assigned as error.

T. R. R. Cobb, for plaintiff in error.

T. W. Thomas, for defendant in error.

*By the Court.*—Starnes, J. delivering the opinion.

[1.] The general rule is well settled, that a witness must state facts, and not his inferences from them. And where conversations to which he has listened are proper evidence, he must state the words used, as near as he can recollect them, and leave the Court and Jury to determine the accurate meaning and signification of these words unless, indeed, they be technical words, or terms of art. But in cases of libel and slander, something of an exception seems to have been made to this rule; and as the injury done depends upon the effect which the words have produced in the minds of the hearers, it has been held, that we can ascertain this effect only by finding what was their understanding of the words used. If nothing injurious to the character of the plaintiff was understood to have been said, of course no damage to him had resulted.

This is said to be the reason for the rule. It is, perhaps, a very good reason; for whatever may have been the understanding of the witnesses as to the meaning of the words used, no harm can come to the defendant, unless it be proven to the satisfaction of the Jury, that the words were used maliciously; that is to say, that the defendant *intended*, by the

use of these words, wrongfully to impute the crime in question to the plaintiff.

We find the rule to which reference is made laid down in the early case of *Fleetwood vs. Curly*, (*Hob.* 267,) where it is said, that " where words have two meanings, and the hearers understood them in an actionable sense, the action is maintainable, for the slander and damage consist in the apprehension of the hearers."

In *Burton vs. Haywood*, (8 *Mod.* 24,) the Court says, that in cases of action for words, " we are to understand words in the same sense as the hearers understood them; but when words stand indifferent, and admit of two interpretations, we ought to construe them *in mitiori sensu*," &c.

In the case of *Rex vs. Horne*, (1 *Cowp.* 687,) the Court of K. B. held, that " As the crime of a libel consists in conveying and impressing injurious reflections upon the mind of the subject; if the writing is so understood by all who read it, *the injury is done* by the publication of these injurious reflections, before the matter comes to the Jury," &c.  See, also, *Dubost vs. Beresford*, (2 *Camp.* 512.   2 *Stark. Ev.* 461.)

According to this rule, the Court properly admitted the testimony of James G. Thomas.

[2.] After the case was submitted to the Jury, the Court instructed that body, that the words proven would not sustain the declaration.   The Counsel for plaintiff then moved an amendment, which was allowed by the Court; and this is assigned as error.

The action had been framed according to the new forms in the Act of 1847.   The amendment proposed to strike out the words alleged in the original declaration, and insert what is equivalent to a *colloquium*, (other words varying in terms, though amounting very much to the same in import, as those originally set forth,) together with appropriate *inuendoes*. It was objected that this could not be done; that it was allowing a new cause of action, and that such an amendment could not properly be made to the Statutory form adopted.

It is our opinion, that the matter of this amendment did

not present a new cause of. action.   It plainly refers to the same conversation alluded to in the original petition, varies the terms in which the words are stated, but by a colloquium and inuendoes, sets forth that which, being very much the same in import, was obviously the same transaction.   It was, therefore, a legitimate subject-matter for an amendment.

We are also of the opinion, that the Statutory form might, in this way, be amended.   And we do not agree with the suggestion, that the Legislature intended that this form should be appropriate to such words only as were of a slanderous signification, without the aid of a colloquium and inuendoes. We think that the Legislature intended to do what was reasonable and sensible, in furnishing these forms.   We desire, in this spirit, to construe the Act and give effect to it; and we believe that it may be thus made quite useful.

So far as the form goes, it must be followed; and there must be no material variation from it.   But when the blanks which it contemplates are to be filled, they may be supplied with such appropriate matter, as falling within the scope of the Statutory direction, is yet fit and proper to set forth the cause of action plainly and distinctly.

The form which this Statute prescribes for the action of slander, is as follows : " The petition of A B showeth, that C D of said county has damaged your petitioner in the sum of        dollars, by falsely and maliciously saying of and concerning your petitioner, on the      day of      the following false and malicious words:"   Here following, the Statute directs the alleged slanderous words to be inserted.

Now why is it not entirely reasonable and proper, that the words should be then written with such explanatory allegations (*or inuendoes*) as serve to make clear and distinct the nature of the injury concerning which complaint is made? We think we are carrying into effect the intention of the Legislature when we hold that this may be done.   We are sure, that in so deciding, we are prescribing a simple and sensible rule.

Let the judgment be affirmed.