## MITCHELL *v.* SIMPSON GROCERY COMPANY.

Where a stock of goods was set apart as an exemption, and the head of the family, without any order of court, continued to carry on a mercantile business and sold the goods and bought others, one who sold to the head of the family goods which became mingled with the exempted property could not, though the beneficiaries were maintained and supported from the business so carried on, maintain against the head of the family and the beneficiaries a suit for the purchase-price of such goods and obtain a judgment condemning the exempted property to the payment of his debt. At most would such a creditor be entitled to subject to the payment of his debt only such of his goods as he could identify in the stock.

Argued October 18, — Decided November 9, 1901.

Equitable petition. Before Judge Henry. Floyd superior court. July 30, 1901.

*C. E. Carpenter*, for plaintiff in error.
*McHenry & Maddox*, contra.

Cobb, J. The petition of the Simpson Grocery Company alleged that a stock of goods and merchandise had been set apart as an exemption to D. R. Mitchell as the head of a family consisting of his wife and minor child; that Mitchell continued to carry on a mercantile business with the exempted property, and that petitioner sold and delivered to him goods and merchandise of a specified amount, which were taken possession of by Mitchell and intermingled with the goods set apart as exempt; that the goods so sold and delivered to Mitchell were necessary and proper to the conduct of the business which he was carrying on; that the same were appropriated and used as a part of the exempted stock and for the benefit of the beneficiaries of the exemption, who were maintained and supported by the business thus carried on. The prayer of the petition was that the plaintiff might have a judgment against D. R. Mitchell as the head of a family and against his wife and daughter, the beneficiaries of the exemption, for the debt, "to be levied especially on said stock of goods, or any additions thereto, and upon any and all other property so set aside or claimed as exempt." By an amendment to the petition it was alleged that there were set apart as exempt, at the same time that the stock of goods was set apart, certain articles of personal property consisting of horses, vehicles, and household furniture. The defendant, D. R. Mitchell, an-

swered, denying all of the material allegations in reference to the right of the plaintiff to subject the exempted estate, and setting up that the goods were sold by the plaintiff to him as an individual and not as a representative of the exempted estate, and further that the debt is not such a debt as can be enforced against and collected out of property set apart as exempt. Mrs. Mitchell and her daughter merely answered that, for want of sufficient information, they could neither admit nor deny the allegations of the petition. At the trial the court directed a verdict in favor of the plaintiff, and upon this verdict a judgment was entered which was "to be levied upon the homestead estate of D. R. Mitchell as the head of a family consisting of his wife, N. L. Mitchell, and minor child, Effie Mitchell, approved December 21, 1888, by the ordinary of Floyd county, Georgia, or the proceeds of such homestead now or hereafter constituting the same, or a part thereof." To the ruling of the court, directing a verdict in favor of the plaintiff and entering the judgment above referred to, the defendants excepted.

Property set apart as exempt under the laws of this State can not be lawfully sold except for the purpose of paying debts of the character specified in the constitution, if the exemption is set apart under the constitution, or debts of the character specified in the statutes, if it is a statutory exemption. It is true that it has been repeatedly held by this court that the interest of beneficiaries in property set apart as a homestead or exemption is in the nature of a trust estate created for their benefit, and that such property may be condemned to the payment of debts to which it is legally liable in the same manner that property of other trust estates may be subjected to the payment of debts. But no matter how regular may be the pleadings and proceedings in a case seeking to subject a trust estate of any character to the payment of a debt, if the proper defense is interposed at the proper time, no lawful judgment can be rendered condemning the trust estate to the payment of the debt, unless the debt belongs to the class which the law declares the trust estate may be brought to sale to pay. This is equally true of proceedings to condemn an exempted estate to the payment of a debt. In the present case the pleadings of the plaintiff seem to be in the form required by law in cases of an effort to subject a trust estate to the payment of a debt, and the necessary parties appear to have been made by the pleadings, but the debt upon which the plain-

tiff's suit is founded does not belong to any of those classes to the payment of which the law declares the exempted property may be subjected; and this is true whether we treat the exemption in the present case as one set apart under the constitution or the statutory provisions. The consideration of the debt is not the purchase-money of the exempted property that is sought to be condemned to sale, or any part thereof, nor does the debt, as has been stated, belong to any class of debts to the payment of which the exempted property may be subjected. Whether the credit was extended to Mitchell as an individual or as the head of the family is immaterial; the exempted property can not be rendered liable to pay the debt. If any portion of the property which had been purchased from the plaintiff could be traced into the stock of goods and identified, such portion, and such portion only, might be liable for the purchase-money, notwithstanding it had become intermingled with the exempted property; but there is no pretense in the present case that any part of the property purchased from the plaintiff is in the hands of Mitchell as the head of the family. Mitchell as an individual is liable upon this debt, and the plaintiff must look to him for payment. He had no right or authority to contract the debt on behalf of the beneficiaries and thus bind their interest in the exempted property. The court erred in directing a verdict for the plaintiff, and in entering the judgment complained of.

Moreover, a careful examination of the record will disclose that there is really in existence now no exempted property. The judgment entered is in the nature of a judgment quando against the exempted estate, which, to say the least of it, is a character of judgment never before heard of in such a case, so far as we are aware. If the exempted estate has been consumed or dissipated, the judgment of course has nothing now to operate on. Under such circumstances nothing can ever come into the exempted estate again, and upon what a judgment quando could operate it is impossible to imagine, even if it is legally possible in any case to enter such a judgment in a suit against an exempted estate. In *Powers* v. *Rosenblatt*, 113 *Ga.* 559, it was held that when a stock of goods had been set apart as exempt, and the head of the family had continued the business, he was not and could not be a trader within the meaning of the insolvent trader's act, now embodied in the Civil Code, §§ 2716–2722, so as to authorize a court of equity to seize and ad-

minister the assets of the estate under that act.   The principle of that decision is controlling here.   There is nothing in the present case to conflict with the ruling made in the case of *Wegman Piano Company* v. *Irvine*, 107 *Ga.* 65.   It was held in that case simply that where a suit had been brought in regular form against the head of a family seeking to subject the homestead to the payment of a debt alleged to belong to the class of debts to the payment of which the homestead would be liable, a judgment rendered in such a suit was binding, not only upon the head of the family, but upon the beneficiaries, the effect of such judgment being simply to adjudicate that the debt described in the petition was a debt for the payment of which the law allowed the homestead to be sold.   To the same effect is *Willingham* v. *Slade*, 112 *Ga.* 418.   See, in this connection, *Snelling* v. *Mortgage Co.*, 107 *Ga.* 852.

*Judgment reversed.   All the Justices concurring.*