30849. COCHRAN *v.* SEARS, ROEBUCK & CO. *et al.*

`DECIDED MAY 10, 1945.

*Frank A. Bowers,* for plaintiff.

*Alston, Foster, Sibley & Miller, Francis G. Jones,* for defendants.

SUTTON, P. J. Elline Cochran, a minor, brought suit by Mrs. Nettie Cochran as next friend against Myrtle Bailey, H. H. Fettes, and Sears, Roebuck & Company, a corporation, in which she claimed damages of $10,000 for an alleged slander and defamation of character. The petition as amended alleged, substantially, that Elline Cochran, as well as the defendants Myrtle Bailey and H. H. Fettes, were employees of Sears, Roebuck & Company at its Ponce de Leon store in Atlanta, Georgia, and that the plaintiff was under the supervision of the defendant Fettes. The petition further alleged that the defendant corporation maintained "a small medical clinic for free use of the employees of said corporation and defendant Bailey was in charge of said clinic as nurse and so employed by the defendant corporation, and her duties were to administer to ill or injured employees of the said corporation and to report to said corporation any and all injuries and/or illnesses and/or diseases of any employee of said corporation;" that on June 13, 1944, the said Elline Cochran, sensing an uncomfortable feeling between her thighs, caused by heat as the result of a heat wave, while working for the defendant corporation, went to the medical clinic and

requested the defendant Bailey to examine her and to give her something to ease her discomfort; that upon examining the said Elline Cochran the defendant Bailey stated to her that the irritation was not caused from heat but was caused from syphilis, and advised her to see a physician and receive treatment; that upon leaving the clinic and before she could return to the office where she was employed, the defendant Bailey telephoned to the defendant Fettes, stating to him that Elline Cochran was infected with syphilis; that when Elline Cochran reached the office, "she was met by the defendant Fettes, who then and there discharged Elline Cochran from her employment, stating to her that she had better see that her trouble was cleared up." The petition further alleged that prior to and during her employment with Sears, Roebuck & Company, Elline Cochran had entered into an arrangement with the Child Welfare Department of Fulton County, Georgia, to have her two small children cared for in a home, with the right of said Elline Cochran to visit the children and to have them when she was not working, and that the matter was under the supervision of a Mrs. Eccort of said Child Welfare Association; that after Elline Cochran was discharged, the defendants Bailey and Fettes caused some unknown employee of the defendant corporation to telephone and state to Mrs. Eccort that Elline Cochran was infected with a venereal disease, and that on the following day Mrs. Eccort told the plaintiff, "I have been informed that you have lost your job [on] account of having a venereal disease, and I will have to tell you that you can not see or go about your children until we have proof that this disease is cleared up." The petition further alleged that Elline Cochran on June 16, 1944, went to Grady Hospital, where a specimen of her blood was taken and sent to the Department of Health of the State of Georgia; that an analysis of the blood was made by the Kahn test and the result was found to be without disease, or negative. The petition further alleged that she was only suffering with prickly heat. By amendment the plaintiff further alleged that after Elline Cochran was sent home, the defendant Fettes called a janitor and in the presence of many employees, ordered the janitor to scrub thoroughly the desk and chair which Elline Cochran had been using with a strong disinfectant, and that the janitor did so. By further amendment it was alleged that in a few days after Mrs. Eccort was informed of the discharge

of Elline Cochran, Mrs. Eccort, unsolicited by Elline Cochran, in an effort to ascertain the truth of the telephone report, went to the clinic of Sears, Roebuck & Company and asked the defendant Bailey why Elline Cochran had been discharged, and that Myrtle Bailey stated, "Because she was found to have a venereal disease." The petition prayed that "as a result of the slanders, acts, and doings of the defendants herein, said Elline Cochran has suffered untold embarrassment and humiliation and said slanders are injurious per se."

The defendants each filed separate demurrers, general and special, to the petition, which were renewed after the petition was amended. The court sustained the general demurrer of each defendant and dismissed the action, and the plaintiff excepted.

■ The court did not err in sustaining the general demurrer of the defendant Sears, Roebuck & Company. It is not alleged in the petition as amended that either the defendant Bailey or the defendant Fettes was directed or authorized by the defendant Sears, Roebuck & Company to utter or commit the alleged slanderous words or conduct. "A corporation is not liable for damages resulting from the speaking of false, malicious, or defamatory words by one of its agents, even where in uttering such words the speaker was acting for the benefit of the corporation and within the scope of the duties of his agency, unless it affirmatively appears that the agent was expressly directed or authorized by the corporation to speak the words in question." *Behre* v. *National Cash Register Co.,* 100 *Ga.* 213 (27 S. E. 986, 62 Am. St. R. 320); *Ozborn* v. *Woolworth,* 106 *Ga.* 459 (32 S. E. 581); *Southern Ry. Co.* v. *Chambers,* 126 *Ga.* 404 (2) (55 S. E. 37, 7 L. R. A. (N. S.) 926); *Ivins* v. *L. & N. R. Co.,* 37 *Ga. App.* 684 (141 S. E. 423); *Sinclair Refining Co.* v. *Meek,* 62 *Ga. App.* 850 (10 S. E. 2d, 76); *Jackson* v. *Atlantic Coast Line R. Co.,* 8 *Ga. App.* 495 (69 S. E. 919). Compare *Sims* v. *Miller's Inc.,* 50 *Ga. App.* 640 (179 S. E. 423), and cit.

Furthermore, the defendant corporation relies upon the proposition that if any slanderous words or acts were spoken or committed by its employees, such were privileged under the law as found in the Code, § 105-709 (2) (3), declaring privileged, statements made bona fide in the performance of a private duty, either legal or moral; and statements made with the bona fide intent, on the part

of the speaker, to protect his own interest in a matter where it is concerned. We think the defendant corporation is also correct in its contention that the petition shows on its face that the alleged slanderous utterances and conduct on the part of the defendants were privileged, and consequently the defense of privilege can properly be raised by demurrer. The inference to be drawn from a proper construction of the petition is that the defendants were acting in good faith with respect to the alleged slanderous statements and conduct; that the statements were made bona. fide in the performance of a private duty and were made with the bona fide intent, on their part, to protect their own interest in a matter where it was concerned, and also to protect the interest of the plaintiff and her own children; that the statements were made to proper persons, on proper occasions, and were properly limited in their scope. There is no allegation that the alleged slanderous statements were maliciously made. Malice is one of the essential elements of slander; "but where the language used is actionable per se, malice is implied, except where the occasion of the utterance renders it privileged, in which case, while the occasion does not excuse if the accusation is maliciously made (Civil Code, § 4437 [Code of 1933, § 105-710]), the burden is put upon the plaintiff to establish malice." *Ivester* v. *Coe*, 33 *Ga. App.* 620 (2) (127 S. E. 790). Applying the foregoing principles of law to the allegations of the petition as construed above, it must be held that the petition failed to set out a cause of action.

■ The court properly sustained the general demurrers of Bailey and Fettes. These two defendants rely upon the defense of privileged communications, and what is said in division 1 of this opinion with respect to privileged communications is applicable to these defendants. It is clearly inferable from the allegations of the petition that these two defendants were acting in good faith and without malice with respect to the alleged slanderous communications concerning the plaintiff. It affirmatively appears from the petition that the defendant Bailey was in charge of the clinic as nurse and so employed by the defendant corporation and that her duties were to report to said corporation any and all injuries, illnesses, or diseases of any employee of said corporation. Thus the communication of Bailey to Fettes was not only a communication made to a business associate in the ordinary and natural course of

462

business, but it was a part of·her duties to report illnesses and diseases of any employee to an official of the corporation, and i⁺ being alleged that Elline Cochran was "under the supervision of the defendant Fettes," it was Bailey's duty to make such report to Fettes. It was said in *Beck* v. *Oden,* 64 *Ga. App.* 407, 412 (13 S. E. 2d, 468) : ."The more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel." *Central of Georgia Ry. Co.* v. *Jones,* 18 *Ga. App.* 414 (89 S. E. 429) ; *George* v. *Georgia Power Co.,* 43 *Ga. App.* 596 (159 S. E. 756) ; 18 A. L. R. 778.

It is contended by the plaintiff in error that the allegation to the effect that the defendants Bailey and Fettes caused some unknown employee of the defendant corporation to call Mrs. Eccort and inform her that Elline Cochran was infected with a venereal disease, and the further statement a few days later by Myrtle Bailey to Mrs. Eccort in response to the question by Mrs. Eccort why Elline Cochran had been discharged was "because she was found to have a venereal disease," are slanderous. It appears on the face of the petition that the children of Elline Cochran were under the supervision of Mrs. Eccort of the Child Welfare Association by an arrangement between Elline Cochran and Mrs. Eccort, and the duty of the latter was to see after the physical and moral welfare of the children so placed under her protecting care. It is alleged that upon receipt of the first information as to the alleged condition of Elline Cochran, "as a direct result of said call and conversation said Mrs. Eccort did go to the home of Elline Cochran and state to her: 'I have been informed that you lost your job [on] account of having a venereal disease, and I will have to tell you that you can not go about your children until we have proof that this disease is cleared up.'" Plaintiff in error contends that because Mrs. Eccort was not related to Elline Cochran and not an employee of Sears, Roebuck & Company, the statements of Myrtle Bailey in answer to the inquiry of Mrs. Eccort are similar to statements made to "outsiders" or third persons and are therefore slanderous. In *Whitley* v. *Newman,* 9 *Ga. App.* 89 (4) (70 S. E. 686), it is said: "Statements in response to inquiries as to another person, when the inquirer is one naturally interested

in his welfare, are privileged. They are statements made in the performance of a private moral duty, within the purview of the Civil Code (1910), § 4-436, par. 2 [Code of 1933, § 105-709];" and in the opinion (p. 95) it is further said: "Even if the alleged statement to Mrs. Whitley imputed a crime, however, we think that, under the circumstances which we have detailed, it was privileged, because it was elicited by one who had an interest in the answer, and, therefore, if not made to anyone else, it would not be slanderous." "A qualified privilege attaches to communications relative to family matters, made in good faith to the proper parties by members, intimate friends and third persons under a duty to speak." 33 Am. Jur. 128, § 130: "A communication is qualifiedly privileged when made in good faith in answer to one having an interest in the information sought, or if volunteered, when the person to whom the communication is made has an interest in it, and the person by whom it is made stands in such a relation to him as to make it a proper or responsible duty to give the information." 17 R. C. L. 336; 78 A. L. R. 1184. The essentials of the defense of privilege are laid down in *Sheftall* v. *Central of Ga. Ry. Co.,* 123 *Ga.* 589 (51 S. E. 646), where it is said: "To make the defense of privilege complete, in an action of slander, or libel, good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying on the privilege." As above stated, we think all of these essentials are disclosed by the petition or they are clearly inferable therefrom. It can reasonably be said from the allegations of the petition that Mrs. Eccort not only had a vital interest in the physical and moral welfare of the children, but also of their parent, and the statement of Myrtle Bailey to Mrs. Eccort, as well as to Fettes, was in the performance of a private duty, either legal or moral, on her part, to give such information, and that it was made with a bona fide intent and without malice, with an interest to be upheld, and a statement properly limited in its scope, a proper occasion, and publication to a proper person. *Watson* v. *McCarthy,* 2 *Ga.* 57 (46 Am. D. 380), *Brown* v. *McCann,* 36 *Ga. App.* 812 (138 S. E. 247), and *Stanley* v. *Moore,* 48 *Ga. App.* 704 (173 S. E. 190), cited and relied on by the plaintiff in error are

464

distinguishable on their facts from the present case, and do not require a different ruling from that which is now being made.

■ The petition failed to set out a cause of action against either of the defendants, and the court did not err in sustaining the general demurrers and in dismissing the action.

*Judgment affirmed. Felton and Parker, JJ., concur.*