50398. SOUTHLAND CORPORATION v. GARREN.

Pannell, Presiding Judge.

The decision in this case (reported in 135 Ga. App. 77 (217 SE2d 347)) was reversed by the Supreme Court of this state on certiorari to the Court of Appeals because of a holding therein that the matter involved was an action for slander, rather than libel, and the application of principles of slander rather than libel to the decision of the case. See *Garren v. Southland Corp.,* 235 Ga. 784 (221 SE2d 571). The judgment in the prior decision has, accordingly, been vacated and the opinion rewritten, including the statement of facts.

Christine Garren brought a complaint against The Southland Corporation, operators of 7-Eleven Food Stores, the petition being in two counts. Count 1 alleged that on or about January 31, 1973, the defendant corporation, by and through its duly authorized agent or employee, did falsely and maliciously in the presence and hearing of other persons say of and concerning plaintiff that said plaintiff was "fired for shortages." She further alleged that these words imputed the crime of stealing and caused others to believe that plaintiff was guilty of the crime of stealing. She denied she was guilty of such crime, alleging she had never stolen any merchandise or money or committed any wrong against defendants while she was employed by defendant. In Count 2 of the complaint, plaintiff alleged that defendant caused its agent or employees to prepare a record on said plaintiff,

which record indicated in writing that plaintiff was "discharged because of shortages." She further alleged the defendant published such defamatory record by communicating the said defamatory statements orally to another person. She further charged in this count that the writings and statements impute the crime of theft, which charge she alleged is wholly unfounded and exposed plaintiff to contempt, ridicule, etc., by imputing the crime of theft to her. Upon the trial of the case the evidence disclosed (as to Count 1) that a co-employee in the same store with the plaintiff made a statement as alleged in Count 1 of the complaint. The trial judge entered an order dismissing Count 1 of the complaint. The evidence as to Count 2 disclosed that the defendant had caused to be made a personnel record of the plaintiff by checking a box on the form followed by the words "discharged—shortages." What the shortages were or how they occurred were not disclosed on the personnel record, although there was space for any other comments. The plaintiff applied for employment with a third person and this person called the office of the defendant, and the woman who answered the telephone, upon his inquiry as to the cause of the firing of the complainant, purportedly orally stated over the telephone the language of the writing in the personnel file (identifying the language as being in said file), that she was "discharged for shortages." There was no evidence as to the person's authority or her position of service with the defendant. The defendant's district manager gave the following answers to the following questions:

"Q. And when a separation notice is prepared, as the one that you just identified, is this notice kept in the corporate records? A. In the employee's personnel file. Q. Is it the usual practice in giving these records to third parties who request this information? A. Not as a general thing, no.

"Q. Of your own personal knowledge, then, sir, are these notices or these personnel files ever revealed to third parties? A. Not unless the supervisor is on duty. In this case, we had a new office which was just opening, with all new personnel. Myself or either one of the supervisors were not in the office when the gentleman called, and a new secretary undoubtedly ... [Interrupted by the court]

"Q. What you're saying — I didn't ask that specific question, but what you're saying is that it's quite possible that in this case, it actually was true that the information from one of your employees, or past employee's personnel record is revealed to third parties? A. In this case, it was."

This is all the evidence as to this area of the case.

At the conclusion of the evidence, the defendant's motion for a directed verdict was overruled and the jury rendered a verdict in favor of the plaintiff in the amount of $5,000. Defendant's motion for a judgment notwithstanding the verdict, and in the alternative a new trial was overruled and the defendant appealed to this court. *Held:*

1. Where, as in the present case, a notation upon a former employee's personnel record in the file of a corporate employer that the employee was "discharged for shortages," if defamatory, constitutes a privileged communication (*Lu Allen v. Home Mission Board of the Southern Baptist Convention,* 125 Ga. App. 456 (2) (188 SE2d 138)), however, this fact does not prevent its oral publication by an employee from constituting the publication of a libel rather than the commission of slander, an oral defamation. *Garren v. Southland Corp.,* 235 Ga. 784, supra.

2. "A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule. The publication of the libelous matter is essential to recovery." Code § 105-701.

(a) There was no evidence of special damage in this case. The charge here does not, as a matter of law, impute a crime punishable by law. See *Whitley v. Newman,* 9 Ga. App. 89 (3) (70 SE 686), where a charge that one is "short" in his accounts is not necessarily a charge of a crime. See also *Jones v. Bush,* 131 Ga. 421 (1) (62 SE 279). Whether or not the words spoken are actionable depends upon the meaning attributable to the words by innuendo and that which is understood by the one who hears them. *Blackstock v. Fisher,* 95 Ga. App. 117 (97 SE2d 322).

(b) A defamatory charge is actionable per se,

whether the words directly or indirectly, by intimation or innuendo, contain libel. The defamatory charge is just as effectively harmful, and therefore actionable per se, that is, without proof of special damages, whether the harmful effect results from words which directly and unequivocally make a charge or whether it results from words which do so indirectly or by inference. It is the harmful effect of defamatory language as it is understood which renders it actionable per se, and not its directness or unequivocal nature. *Brandon v. Arkansas Fuel-Oil Co.,* 64 Ga. App. 139, 146 (12 SE2d 414). Ordinarily such a situation presents a question for the jury to decide. *Kaplan v. Edmondson,* 68 Ga. App. 151, 154 (22 SE2d 343); *Walker v. Sheehan,* 80 Ga. App. 606, 611 (56 SE2d 628); *Davis v. Macon Tel. Pub. Co.,* 93 Ga. App. 633, 636 (92 SE 619); *World Ins. Co. v. Peavy,* 110 Ga. App. 651 (139 SE2d 440); *Southland Pub. Co. v. Sewell,* 111 Ga. App. 803, 807 (143 SE2d 428); *Holmes v. Clisby,* 121 Ga. 241 (4) (48 SE 934).

(c) The party to whom the words were spoken, in the present case, testified: "Q. What is the usual meaning and understanding of this expression which you have, discharged due to shortages? A. Well, it means to me — I have previously been a salesman which was affiliated with the Southland Corporation of stores; to me it meant a number of things. *It didn't necessarily* mean stealing money; it meant that it could be *shortages of inventory or a number of things.* It didn't *necessarily mean to me that (she) was dishonest. . .* Q. Well, my question was, what the usual meaning and understanding of the expression was. Taking the term, discharged for shortages, if you had checked out an employee applying for a job in your place of business, and a reference was that this employee was previously discharged for shortages, what would this conjure in your mind? A. *In some form of dishonesty or some form* of somebody is slack on the job and let somebody steal something or take something out that was not accounted for."

A jury could have found from this testimony that the words spoken imputed the defendant was dishonest to the one who heard them and were so understood by him, though not believed, but the fact that one is dishonest does

not necessarily impute a crime, nor do the words, in our opinion, carry the imputation that the plaintiff was guilty of some debasing act, which may exclude her from society. See *Morris v. Evans,* 22 Ga. App. 11, 12 (95 SE 385); *Ivester v. Coe,* 33 Ga. App. 620 (127 SE 790). However, since the words published were in reference to the plaintiff's trade, that is her clerking in a store, it was unnecessary to allege or prove special damage in order to recover. See *George v. Ga. Power Co.,* 43 Ga. App. 596, 597 (159 SE 756); *Blackstock v. Fisher,* 95 Ga. App. 117 (97 SE2d 322); Code § 105-702. While in *Tillman v. Willis,* 61 Ga. 434, in Division 1 of the opinion therein, the Supreme Court said "[t]he distinction between written or printed defamation and oral slander, in reference to being actionable irrespective of special damages, is recognized by the Code," and referred to Code §§ 105-701 and 105-702 (see also *Harrison v. Pool,* 24 Ga. App. 587); yet, this same court in *Dun & Co. v. Weintraub,* 111 Ga. 416, 419 (36 SE 808) said: "The code declares that charges made of another in reference to his trade, office, or profession, calculated to injure him therein, are slanderous without proof of special damage. Civil Code § 3837. And, as said by the present Chief Justice in *Hardy v. Williamson,* 86 Ga. 557, 'If this be true as to mere slander, much more is it true as to written defamation.' See also *Brown v. Holton,* 109 Ga. 431, 13 Am. & Eng. Enc. L. (1st ed.) 314; *Newell, Slan. & Lib.* 2d ed.) 74, 193; *Odgers, Lib. & Slan.* * 77; Price v. Conway, 134 Pa/St. 340." We, accordingly, hold that special damages are not necessary for recovery in the present case.

3. "A corporation is not liable for damages resulting from the speaking of false, malicious, or defamatory words by one of its agents, even where in uttering such words the speaker was acting for the benefit of the corporation and within the scope of the duties of his agency, unless it affirmatively appears that the agent was expressly directed or authorized by the corporation to speak the words in question." *Behre v. National Cash Register Co.,* 100 Ga. 213 (27 SE 986, 62 A S R 320); *Russell v. Dailey's Inc.,* 58 Ga. App. 641 (199 SE 665); *Sinclair Refining Co. v. Meek,* 62 Ga. App. 850 (1) (10 SE2d 76); *Cochran v. Sears, Roebuck & Co.,* 72 Ga. App. 458 (1) (34 SE2d 296); *Braden*

*v. Baugham,* 74 Ga. App. 802 (1) (41 SE2d 581); *Woolf v. Colonial Stores, Inc.,* 76 Ga. App. 565 (46 SE2d 620).

This rule is a corollary to the rule that the doctrine of respondeat superior does not apply to slander or oral defamation. *Lanham v. Keys,* 31 Ga. App. 635 (121 SE 856); *Goldgar v. North Fulton Realty Co.,* 106 Ga. App. 459 (127 SE2d 189); *Southern R. Co. v. Chambers,* 126 Ga. 104 (55 SE 37). Yet, where libel is concerned it must be shown that the servant who published the libel "was acting within the scope of his employment or in the prosecution of the master's business" or "that the nature of the employee's service was such that his authority to perform the act on behalf of his employer could be legitimately inferred." See *Rivers v. Mathews,* 96 Ga. App. 546 (2) (100 SE2d 637), a case where an alleged written libel was published orally, and the court applied both slander and libel rules and held no cause of action was shown under either. We find no evidence showing the servant who published the alleged libel was acting within the scope of his employment or in the prosecution of the master's business or that the nature of the employee's service was such that authority to perform the act on behalf of the employer could be legitimately inferred. Such evidence as there was on the subject tended to the contrary. Under these circumstances no recovery was authorized against the employer.

The trial judge erred in overruling the motion for judgment notwithstanding the verdict.

*Judgment reversed. Quillian and Clark, JJ., concur.*

ARGUED MARCH 11, 1975 — DECIDED MARCH 9, 1976 — REHEARING DENIED MARCH 30, 1976 — 

*Bouhan, Williams & Levy, James M. Thomas,* for appellant.

*Pierce, Ranitz, Berry, Mahoney & Forbes, C. James McCallar, Jr.,* for appellee.